IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAN W. BUDZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>Defendant. ) | No. 12 C 3193<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jan W. Budz's claims for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 18] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

On May 9, 2008, Budz filed a claim for Disability Insurance Benefits and on July 16, 2008, he filed another application for Supplemental Security Income

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

benefits, alleging disability since May 15, 2005.[2] The claims were denied initially on January 12, 2009 and upon reconsideration on April 30, 2009, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 7, 2010. Claimant personally appeared and testified at the hearing and was represented by counsel. Vocational expert Ed Pagella also testified.

On September 27, 2010, the ALJ denied Budz's claims for both Disability Insurance Benefits and Supplemental Security Income and found him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review on February 28, 2012, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[3]

### A. <u>Background</u>

Budz was born on October 7, 1956 in Poland and as of June 30, 2009, his date last insured, he was fifty-two years old. He has a limited eighth-grade education and past relevant work as a machine mechanic. At the time of the hearing, he was living with his elderly mother. Budz claimed disability due to ataxia (poor motor coordination), leg weakness, and pain.

---

[2] At his administrative hearing, the disability onset date was amended to May 2007.
[3] The following facts from the parties' submissions are undisputed unless otherwise noted.

2

### B. Medical Evidence

Budz saw Dr. Peter Biale, M.D. at the SSA's request on September 22, 2008. Budz reported difficulty walking and an unsteady gait that had been getting progressively worse. A recent CT scan performed at Stroger Hospital showed atrophy of the cerebellum. Dr. Biale noted that Budz walked with an unsteady, wide gait, and while he could bear his own weight, he experienced tremors in both legs. The tremors caused him difficulty in getting on and off the examination table. Dr. Biale further reported that Budz could not squat or do a heel walk or toe walk without losing balance immediately. Deep tendon reflexes ("DTRs") were hyperreflexive in Plaintiff's legs, and motor strength in both legs was recorded as 4/5. Cerebellar testing was found to be abnormal, with Romberg positive[4] 4+, and finger-to-nose and heel-to-shin both abnormal.

Dr. Charles Wabner, M.D., a non-examining state agency review completed a Residual Functional Capacity ("RFC") form on January 7, 2009. He concluded that Budz could perform work at the medium exertional level without any postural or environmental limitations.

On March 13, 2009, Budz went to the Stroger Hospital emergency room, complaining of slowly progressive bilateral leg pain. He also stated that he experienced leg cramps at night and could walk only two blocks as a result of leg pain. The examining physician noted an ataxic gait and anaxic finger-to-nose

---

[4] The Romberg test is used to determine the cause of ataxia, or the loss of motor coordination. A positive Romberg test suggests that the ataxia is sensory in nature and caused by the loss of proprioception. A negative test suggests that it is caused by localized cerebellar dysfunction.

presentation, and a negative Romberg test. He was diagnosed with ataxia of unknown etiology.

An MRI of Budz's brain taken on August 25, 2009 showed moderate atrophy, considered advanced for his age, and mild small vessel ischemic changes. The MRI also revealed "multiple small old infarcts in the pons bilaterally." (R. 291.) A September 2009 EMG was normal.

Plaintiff began seeing Dr. Serge Pierre-Louis at the Cook County Health neurology clinic in April 2009, when Budz reported that he experienced progressive leg pain, decreased balance, and leg weakness for three years, and tingling in his feet for two to three months. He admitted to being a heavy drinker in his twenties and thirties but stated that his use of alcohol had decreased over the last five years. Budz's DTRs were slightly increased, and there was positive horizontal nystagmus on examination. His gait was noted to be spastic with mild ataxia, and the Romberg test was positive. The physician's impression was of probable cerebellar dysfunction. Notes from July 14, 2009 show positive horizontal nystagmus to the left and mild upward nystagmus, and DTRs were increased in Budz's legs. The impression in these notes was of profound cerebellar ataxia, possibly due to alcohol.

Dr. Pierre-Louis's November 10, 2009 treatment notes reflect complaints of bilateral leg pain, and the examination again showed a spastic gait and increased DTRs. These notes indicated that the bilateral pons infarcts could be the cause of the ataxia. Additional notes from March 9, 2010 show complaints of ataxia,

4

dizziness, leg weakness with walking, and tremors. The Romberg test was negative, but Budz's gait was slow and spastic.

Dr. Pierre-Louis, completed a functional capacity assessment on June 23, 2010. Dr. Pierre-Louis noted that he had been treating Budz every three to four months at the Cook County Health neurology clinic since April 2009. In noting the bilateral pons infarcts, white matter changes, and small vessel ischemia, Dr. Pierre-Louis reported that Budz had suffered a stroke. He listed various symptoms suffered by Budz, including balance problems, poor coordination, loss of manual dexterity, weakness, unstable walking, falling spells, numbness, tingling, vertigo/dizziness, confusion, emotional lability, pain, fatigue, and shaking tremor. His clinical findings included positive nystagmus, increased DTRs, positive Romberg, poor balance, and a spastic gait.

Dr. Pierre-Louis concluded that Budz's pain and other symptoms would frequently interfere with his attention and concentration, and further that Budz could only sit, stand, or walk for less than two hours in an eight-hour workday. He opined that Plaintiff would need frequent unscheduled breaks that he would need to elevate his legs 70% of the time due to numbness, pain, and tingling. He also stated that Budz could never lift fifty pounds but could occasionally lift twenty pounds. Finally, he asserted that Budz would likely miss work more than four days per month.

On June 22, 2011, Dr. Pierre-Louis reported that after his initial treatment in the neurology clinic, Budz underwent surgery, chemotherapy, and radiation

therapy for left neck cancer, which resulted in left arm weakness, difficulty with memory and concentration, daily dizziness, and worsening of his leg pain, leg weakness, and balance.

### C. Plaintiff's Testimony

Budz testified that he last worked in May 2005, when he was laid off, and he was currently unable to work because his legs shake and are weak, and he is also unable to lift and is dizzy. He reported that his problems started getting really bad about two years earlier. He helps his mother with cooking, cleaning, and laundry. Budz testified that he does little walking as a result of the cramps in his legs, and he can only take out the trash because the bin is on wheels. He was able to ride his bicycle a block and a half to the store two weeks prior to the hearing, but he had to walk it home because he got shaky. He will sometimes shop for small items, but his sister or his niece takes his mother to the store for the major grocery shopping. Budz sometimes does a small amount of lawn mowing, but it takes him a long time; his neighbor finishes the rest. He also shovels some snow from the front door to the mailbox, so that his mother does not fall, but again his neighbor helps by completing the shoveling. Budz estimated that he could only lift twenty-five or thirty pounds, but he could not walk while carrying that amount of weight. He believed he could sit for twenty to thirty minutes and stand for only fifteen minutes before his legs would start to shake. He got a cane a few years ago to assist him with his balance, although it was not prescribed.

At the hearing, Budz explained a discrepancy on his initial application, in which he stated that he could not speak or understand English. He stated that he meant to say that while he can read and write English (Polish is his first language), it was difficult for him to complete the application.

### D. Vocational Expert Testimony

Ed Pagella testified at the hearing as a Vocational Expert ("VE"). The VE testified that Budz's past work was skilled and exertionally heavy, and that the skills he acquired were industry-specific and not transferrable to light or sedentary work.

The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as Plaintiff, limited to light work with limitations from unprotected heights and moving machinery could perform any work. The VE testified that such a person could perform jobs of hand packer, cashier, and usher. The need for a sit/stand option would eliminate the cashier and usher positions, as even with that option, an individual must have the ability to stand for six hours out of an eight-hour workday. Needing a cane to balance would eliminate light-level jobs with a sit/stand option, because he would need both hands to complete his tasks. Similarly, those jobs would be eliminated if he needed to rest a hand on the work surface for balance. Because all of the listed jobs required frequent use of hands for manual dexterity, a limitation to less than frequent use of his hands would eliminate them as well. Finally, the VE opined that the tolerance for being off-task during the workday is fifteen percent.

### D. ALJ Decision

The ALJ found that Budz had not engaged in substantial gainful activity since his alleged onset date, he had a severe impairment of ataxia with poor coordination, and the impairment did not meet or medically equal a Listing. The ALJ determined that Budz retained the RFC to perform light work, with limitations that he not work around unprotected heights or moving machinery. At step five, based upon the VE's testimony and Plaintiff's RFC, the ALJ concluded that Budz can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

9

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Budz argues that the ALJ's decision was in error because: (1) the RFC finding that Budz could sustain light work was erroneous; and (2) he improperly rejected the opinion of Dr. Pierre-Louis.[5]

### A. RFC Finding

Budz first contends that the ALJ's RFC determination was not supported in the record. The ALJ based his finding that Budz retained the ability to perform light work on a number of factors, including that the allegedly disabling symptoms are not supported by the objective medical evidence and that Budz's statements about the extent of his symptoms are not credible.

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88).

SSR 96-7p(4)[6] states that a claimant's statements about the intensity or persistence of symptoms cannot be disregarded solely because they are not

---

[5] Plaintiff also argues that the ALJ's step five finding that Budz could perform jobs in significant number was in error. However, this argument is solely based upon the allegedly erroneous RFC determination and will not be separately discussed.

11

substantiated by objective medical evidence. *Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see* SSR 96-7p at *3. When the claimant attends an administrative hearing, the ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p at *5.

The Commissioner argues that the ALJ's credibility determination was based upon substantial evidence, including the fact that Budz was never prescribed a cane for walking; the neurological findings do not demonstrate serious neurological deficits; Budz retained good strength, sensation, reflexes, and range of motion despite his gait problems; diagnostic tests such as MRI and nerve conduction studies showed generally benign findings; and he had a fairly conservative treatment, taking only Tylenol for the pain.

In addition, the ALJ analyzed Budz's daily activities and concluded they demonstrated that he retained the ability to perform a wide range of work-related activities. Specifically, the ALJ listed Budz's ability to ride a bike, shovel show, mow the lawn, perform self-care, take walks, cook, and perform household chores.

---

[6] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

Defendant points out that the ALJ did not find that these activities, by themselves, are the equivalent of competitive work, but they tended to show that his allegations of disabling symptoms are not credible.

Also relevant to the ALJ's determination that Budz was not credible was a December 2008 Office of the Inspector General ("OIG") report, which provided additional evidence that his symptoms were exaggerated. OIG investigators spoke with Budz's neighbors, who advised that he was active in the neighborhood, and he did not appear to have any disabilities. They stated that Budz was seen riding his bike and cutting his grass, and he was not known to have any difficulty walking and used no assistive devices. The investigators themselves observed Budz shoveling show for two to three minutes with no apparent difficulty. During this visit, Budz told the investigators that he could return to work if he had to, but he could do no heavy lifting.

The ALJ's credibility finding was specific, it was not patently wrong, and it will not be disturbed by this Court. The lack of objective medical evidence is not by itself reason to find Claimant's testimony to be incredible, *see Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005), but Budz has not shown that the ALJ was unreasonable in giving greater weight to the medical evidence and evidence of his daily activities, which failed to support his objective complaints of completely disabling symptoms, than it did to his testimony.

### B. Treating Physician Rule

Budz next argues that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of his treating physician, Dr. Pierre-Louis. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See Scott*, 647 F.3d at 740.

The ALJ rejected Dr. Pierre-Louis's opinion for several reasons: there was virtually no objective support for his conclusion that Budz's activities were so limited; Budz's diagnostic test results "have been essentially benign"; and Budz only saw Dr. Pierre-Louis every three months, indicating that his symptoms may not be as acute as claimed.

Plaintiff contends that the ALJ failed to identify which tests or findings he considered to be "benign," and he also did not inquire about how frequently patients

14

are able to be seen at Stroger Hospital's neurology clinic. Plaintiff takes particular issue with the ALJ's refusal to credit the part of Dr. Pierre-Louis's report where he opined that Budz could only stand or walk for less than two hours in an eight-hour workday. This opinion is significant, because if it were credited, the medical-vocational guidelines (the "Grid") would direct a finding that Plaintiff is disabled. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Table No. 1 (showing that under rule 201.10, a person closely approaching advanced age, with limited education, skills that are not transferrable, and who is limited to sedentary work is considered disabled).

The Commissioner responds that the ALJ properly applied the factors when he declined to give Dr. Pierre-Louis's opinion controlling weight. Namely, the ALJ considered the limited nature and length of the treating relationship and the unremarkable nature of Dr. Pierre-Louis's treatment records, given the extreme functional limitations included in his opinion. The Court agrees that Dr. Pierre-Louis's opinion does not contain any assessment explaining why Budz was much more severely limited than the objective medical evidence would suggest. In addition, while Plaintiff takes issue with the ALJ's description of the results of neurological testing as "essentially benign," he offers no argument explaining which of the results are not in fact benign and are instead suggestive of completely disabling symptoms. Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Pierre-Louis's opinion.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 18] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

**SO ORDERED.**                    **ENTERED:**

*[signature: Maria Valdez]*

**DATE:    December 18, 2014**         _____
                                       **HON. MARIA VALDEZ**
                                       **United States Magistrate Judge**